UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

CHAD M.,[1]                                             Case No. 2:23-cv-1215

       Plaintiff,                                  Bowman, M.J.

v.

COMMISSIONER OF SOCIAL SECURITY,

       Defendant.

**MEMORANDUM OPINION AND ORDER**

Plaintiff filed this Social Security appeal in order to challenge the Defendant's finding that he is not disabled. *See* 42 U.S.C. §405(g). Proceeding through counsel, Plaintiff presents three claims of error for this Court's review.[2] The Court will AFFIRM the ALJ's finding of non-disability because it is supported by substantial evidence in the record as a whole.

**I. Summary of Administrative Record**

On October 18, 2018, Plaintiff filed an application for Supplemental Security Income ("SSI"), alleging a disability onset date in January 2001 based on his back pain, memory loss, depression, anxiety, right knee, right hand and left arm impairments. (Tr. 300). Because SSI is not payable for more than a month prior to the application date, he was only required to prove his disability began prior to September 17, 2018. (Tr. 19).

---

[1] Due to significant privacy concerns in social security cases, this Court refers to claimants only by their first names and last initials. *See* General Order 22-01.
[2] The parties have consented to final disposition before the undersigned magistrate judge in accordance with 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73.

1

After Plaintiff's application was denied at the initial and reconsideration levels, he sought an evidentiary hearing before an administrative law judge ("ALJ"). On August 25, 2020, ALJ Irma Flottman held a hearing at which Plaintiff and his attorney appeared by telephone; a vocational expert also testified. (Tr. 62-91). On September 9, 2020, the ALJ issued an adverse written decision. (Tr. 123-140). However, the Appeals Council set aside that decision and remanded for consideration of additional new and material evidence concerning a brain tumor in Plaintiff's frontal lobe. (Tr. 141-145).

Following remand, on April 5, 2022, ALJ Flottman conducted a second telephonic hearing. Plaintiff again appeared with counsel and gave testimony, as did a second vocational expert. (Tr. 37-61). On April 22, 2022, the ALJ issued a second adverse decision. The Appeals Council declined further review, leaving that decision as the final decision of the Commissioner.

Plaintiff was 45 years old on the date of the ALJ's second decision. He has a limited education, having left school after the ninth grade, and never having obtained a GED. He has past relevant work as a commercial cleaner and as a construction worker, but has not worked since 2011. (Tr. 30). He testified that he lives with his girlfriend and her mother.[3] (Tr. 42).

The ALJ determined that Plaintiff has the following severe impairments: "chondromalacia/strain of right knee – status/post right knee arthroscopy with a partial medial meniscectomy; tinnitus status/post craniotomy with brain tumor revision; mild degenerative disc disease of the lumbar spine with sciatica; major depressive disorder;

---

[3]Plaintiff reported one marriage that ended in 2007, and another relationship that lasted from 2008 to 2020. (Tr. 478). He has no children.

and generalized anxiety disorder." (Tr. 19). The ALJ found no other severe impairments, but considered other "relatively minor, resolved, nonrecurring, or controlled complaints and conditions, including left 5th finger laceration, paresthesia of the hands, ganglion cyst, memory loss - status/post hemorrhagic cerebrovascular accident, and acute right shoulder pain." (Tr. 20). Considering all of Plaintiff's severe and nonsevere impairments, the ALJ determined that none, either alone or in combination, met or medically equaled any Listing in 20 C.F.R. Part 404, Subpart P, Appendix 1, such that Plaintiff would be entitled to a presumption of disability. (Tr. 20)

Despite his impairments, the ALJ found that Plaintiff remains capable of light work, subject to the following additional conditions:

> [N]o climbing ladders, ropes, or scaffolds; occasional climb ramps and stairs; occasional stooping, kneeling, crouching, and crawling; moderate exposure to excessive noise; must avoid all exposure to hazards (no use of moving machinery, no exposure to unprotected heights, and no commercial driving). Mentally, limited to performing simple, short cycle 1-3 step tasks and instructions involving a set routine, where major changes are explained in advance and are gradually implemented; he should avoid fast-paced work and work with strict production standards or time demands; he could occasionally and superficially, interact with the public, coworkers, supervisors; and he should avoid tandem tasks. Superficial interaction is defined as impersonal interaction, but adequate interaction to perform duties assigned.

(Tr. 23). Based upon Plaintiff's age, education, and RFC, and considering testimony from the vocational expert, the ALJ found that Plaintiff was not disabled because he could perform his past work of commercial cleaner as he had actually performed it. (Tr. 30).

In this appeal, Plaintiff argues that the ALJ erred by failing to include at least two limitations in the hypothetical questions posed to the vocational expert, and by concluding that Plaintiff can perform work at the light exertional level. (Doc. 8 at PageID 757). Specifically, Plaintiff argues that the ALJ erred: (1) by failing to include an "off task" mental

3

RFC limitation; (2) by failing to restrict use of Plaintiff's hands to no more than the "occasional" level; and (3) by finding Plaintiff capable of his past work at the light exertional level. The Court finds no error.

## II. Analysis

### A. Judicial Standard of Review

To be eligible for benefits, a claimant must be under a "disability." *See* 42 U.S.C. §1382c(a). Narrowed to its statutory meaning, a "disability" includes only physical or mental impairments that are both "medically determinable" and severe enough to prevent the applicant from (1) performing his or her past job and (2) engaging in "substantial gainful activity" that is available in the regional or national economies. *See Bowen v. City of New York*, 476 U.S. 467, 469-70 (1986).

When a court is asked to review the Commissioner's denial of benefits, the court's first inquiry is to determine whether the ALJ's non-disability finding is supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (additional citation and internal quotation omitted). In conducting this review, the court should consider the record as a whole. *Hephner v. Mathews*, 574 F.2d 359, 362 (6th Cir. 1978). If substantial evidence supports the ALJ's denial of benefits, then that finding must be affirmed, even if substantial evidence also exists in the record to support a finding of disability. *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994). As the Sixth Circuit has explained:

> The Secretary's findings are not subject to reversal merely because substantial evidence exists in the record to support a different conclusion.... The substantial evidence standard presupposes that there is a 'zone of choice' within which the Secretary may proceed without interference from

>the courts. If the Secretary's decision is supported by substantial evidence, a reviewing court must affirm.

*Id.* (citations omitted). *See also Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (holding that substantial evidence is evidence a reasonable mind might accept as adequate to support a conclusion and that the threshold "is not high").

In considering an application for supplemental security income or for disability benefits, the Social Security Agency is guided by the following sequential benefits analysis: at Step 1, the Commissioner asks if the claimant is still performing substantial gainful activity; at Step 2, the Commissioner determines if one or more of the claimant's impairments are "severe;" at Step 3, the Commissioner analyzes whether the claimant's impairments, singly or in combination, meet or equal a Listing in the Listing of Impairments; at Step 4, the Commissioner determines whether or not the claimant can still perform his or her past relevant work; and finally, at Step 5, if it is established that claimant can no longer perform his or her past relevant work, the burden of proof shifts to the agency to determine whether a significant number of other jobs which the claimant can perform exist in the national economy. *See Combs v. Commissioner of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006); 20 C.F.R. §§404.1520, 416.920.

A plaintiff bears the ultimate burden to prove by sufficient evidence that he is entitled to disability benefits. 20 C.F.R. § 404.1512(a). A claimant seeking benefits must present sufficient evidence to show that, during the relevant time period, he suffered an impairment, or combination of impairments, expected to last at least twelve months, that left him unable to perform any job. 42 U.S.C. § 423(d)(1)(A).

**B. Plaintiff's Claims**

**1. The Lack of an Off-Task Limitation was Substantially Supported**

Plaintiff's first claim is that the ALJ failed to include a mental RFC limitation that he would be "off task" for more than 10% of the day, a limitation that the VE agreed would preclude all unskilled work, including Plaintiff's past work. (Tr. 58, 60). Such an "off-task" limitation most closely relates to the broad functional domain of being able to concentrate, persist or maintain pace.

The Court finds no reversible error in the ALJ's failure to include such a limitation. Plaintiff fails to point to *any* medical opinion or other evidence that compelled the inclusion of an off-task limitation or of any other mental limitation that the ALJ failed to adopt. Conversely, the mental RFC as determined by the ALJ (without an off-task limitation) is substantially supported by the relevant medical opinion evidence as well as by other portions of the record.

In support of an off-task limitation, Plaintiff cites primarily to his own testimony about memory problems and headaches lasting hours at a time, and his diagnosis of a brain tumor in his frontal lobe just after the ALJ's first decision. (Tr. 52). The record reflects that the tumor was removed in January 2021, but Plaintiff testified that he experienced no improvement in his symptoms. (*Id.*) To the contrary, he testified that since his surgery, he has suffered from a ringing in his ears as often as five or six days per week that is nearly constant, a condition diagnosed as tinnitus. (Tr. 44-45). The ALJ acknowledged and evaluated this evidence by listing "tinnitus status/post craniotomy with brain tumor revision" among Plaintiff's severe impairments, but found his separate complaint of

6

"memory loss - status/post hemorrhagic cerebrovascular accident" to be nonsevere. (Tr. 19-20).

Plaintiff's reliance on his subjective complaints to support an off-task limitation is misplaced. Even if his complaints had been fully credited, they do not necessarily support an "off-task" limitation. Plaintiff fails to explain why the many mental RFC limitations assessed by the ALJ, including but not limited to the limitation to "performing simple, short cycle 1-3 step tasks and instructions involving a set routine" with no fast-paced work or strict production or time demands, would not fully address his headache/memory/tinnitus complaints. But more importantly, the ALJ expressly discounted Plaintiff's subjective reports, drawing an adverse consistency/credibility determination. (Tr. 25, "[T]he claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record."). The ALJ's adverse consistency/credibility determination is entitled to great deference, and Plaintiff does not challenge that determination before this Court.

As examples of inconsistencies, the ALJ noted that Plaintiff made "some complaints of headaches and tinnitus," but not to the extent to which he testified at the hearing. For example, he reported no headaches during some office visits later in 2021 and testified that he used only Tylenol to treat his headaches. (Tr. 26; *see also* Tr. 27, noting no headaches in August 2021). He reported worsening tinnitus in early 2022, but also that his condition had been relieved with prescription medication, contrary to his hearing testimony. (Tr. 26; see also Tr. 27). Plaintiff's medical records also contained no

7

support for the type of severe "'constant and distracting' ringing in his ears" to which he testified at the hearing. (Tr. 26).

In addition to evaluating the relevant medical records and Plaintiff's subjective reports, the ALJ considered a total of three agency consulting opinions concerning Plaintiff's mental limitations. The ALJ's determination of Plaintiff's mental RFC closely tracks the mental RFC opinions of two of those consultants, on whose opinions the ALJ heavily relied. Notably, neither the psychologists on whom the ALJ relied, nor any other examining, treating, or consulting physician or psychologist, opined that Plaintiff would require any amount of time off-task during the workday.

On January 12, 2018, Plaintiff underwent a consultative examination by Gregory Johnson, Ph.D., on January 12, 2018. Dr. Johnson's report focuses on the four broad functional areas known as the paragraph B domains. Relevant to Plaintiff's advocacy of an off-task limitation, Dr. Johnson offered three opinions that hinted at *possible* limitations. First, he opined that "[i]t seems that the claimant has a somewhat elevated risk for dysfunction in remembering instructions" and "in carrying out instructions… to completion." (Tr. 484). Regarding the domain of maintaining attention and concentration, and maintaining persistence and pace, Dr. Johnson similarly opined: "[i]t seems the claimant has an elevated risk for dysfunction in maintaining attention and concentration" in both simple and multi-step tasks. (*Id.*) Last, based on Dr. Johnson's' clinical observation that Plaintiff was easily distracted by ambient noises during the assessment interview and Plaintiff's reported "experience of hopelessness," "poor self-esteem," and low energy level, Dr. Johnson suggested that Plaintiff "has an elevated risk for dysfunction in maintaining pace and persistence in both simple and multi-step tasks in the workplace."

8

(Tr. 484-485). Despite these opinions, Dr. Johnson offered no definitive opinions concerning <u>any</u> specific functional limitations, including "off-task" time. And Dr. Johnson stated that Plaintiff reported no history of receiving reprimands for not completing tasks given to him, or for not maintaining pace in the workplace. (Tr. 479).

The ALJ deemed Dr. Johnson's opinions to be "not persuasive" with regard to the critical element of functional limitations:

> This opinion was made after a thorough examination of the claimant and the concurrent examination has been considered in assessing the RFC above. However, the opinion is phrased in vague terms such as "somewhat elevated" risk, which lessen the value of this opinion. To the extent that it suggests a moderate degree of limitation in each of the four areas of mental functioning, it is consistent with the broader record. However, the undersigned finds the opinion not persuasive overall, as it is vague and does not affirmatively assess specific functional limitations.

(Tr. 29).

On January 10, 2019, a non-examining consultant, Kristen Haskins, Psy.D., reviewed Dr. Johnson's clinical examination report and other records and assessed "moderate" limitations in all four "paragraph B" functional areas, including the abilities to understand, remember or apply information, to interact with others, to concentrate, persist or maintain pace, and to adopt or manage oneself. (Tr. 98-99). Dr. Haskins more specifically opined that Plaintiff was moderately limited in his ability to understand and remember detailed instructions, but was not significantly limited in his ability to understand and remember or carry out very short and simple instructions. (Tr. 102). Thus, she found he "can understand simple instructions 1-3 steps." (*Id.*) She further opined that he "can carry out short cycle tasks in a setting that does not have fast pace demand where [he] can work away from others." (Tr. 102). Last, she opined that Plaintiff

9

> can work within a set routine where major changes are explained in advance and gradually implemented to allow the claimant time to adjust to the new expectations. The claimant's ability to handle routine stress and pressure in the work placed would be reduced, but adequate to handle tasks without strict time limitations or production standards.

(Tr. 103). On reconsideration, Todd Finnerty, Psy.D., similarly found "moderate" limitations. (Tr. 113). In terms of specific functional limitations, Dr. Finnerty wholly agreed with Dr. Haskins' mental RFC opinions. (Tr. 117-118).

The ALJ appropriately evaluated the consistency and supportability of each opinion. She reasoned that both non-examining consulting opinions were "persuasive" because they were "generally supported by the bulk of the objective medical evidence in the record" and [t]he reported benefit of prescription medication on the claimant's mental condition and the relative lack of findings during mental status examinations elsewhere in the record support no more significant mental limitation." (Tr. 29). The ALJ therefore adopted the mental RFC opinions of Drs. Haskins and Finnerty in full, with minor alterations to their language as follows:[4] (Tr. 29).

> Mentally, limited to performing simple, short cycle 1-3 step tasks and instructions involving a set routine, where major changes are explained in advance and are gradually implemented; he should avoid fast-paced work and work with strict production standards or time demands; he could occasionally and superficially, interact with the public, coworkers, supervisors; and he should avoid tandem tasks. Superficial interaction is defined as impersonal interaction, but adequate interaction to perform duties assigned.

---

[4]Plaintiff does not challenge the ALJ's minor rewording of the limitations expressed by Drs. Haskins and Finnerty.

10

(Tr. 23). The mental RFC as determined by the ALJ – including her decision not to include a "off-task" limitation - is more than substantially supported by psychological opinion evidence in this case.

### 2. The Lack of Handling Limitations is Substantially Supported

Plaintiff's second claim of error is that remand is required based on the ALJ's failure to include a handling limitation, specifically, a limitation to only "occasional" handling. (Doc. 8 at 11, PageID 767, complaining that the ALJ did not include a limitation reflecting "Plaintiff's inability to use his *left* hand more than occasionally." (emphasis added)).[5] In response to questioning from Plaintiff's counsel, the VE testified that a limitation to handling with the right hand only occasionally would eliminate all unskilled work, even at the sedentary level. (Tr. 60).

In support of this added limitation, Plaintiff again relies primarily on his subjective complaints. He testified that he had surgery on his right hand for a torn tendon many years ago, and has experienced ongoing problems gripping with his right hand, frequently dropping things or having difficulty picking things up. (Tr. 48-49). Plaintiff also testified to difficulties with his left arm. (Tr. 49-50). But when his attorney questioned whether he had any problems with his left *hand*, Plaintiff clarified: "Not my hand, but my left arm, where my plates are" from a fracture in the "distant past." (Tr. 49). He testified that he experiences a "strain" in his left arm when he tries to lift a half gallon of milk, and that the resulting pain makes him "want to drop it." (Tr. 50).

---

[5]Plaintiff testified to pain in his left *arm*, not to an inability to use his left *hand*. He did testify to dropping things held in his *right* hand.

11

There is almost no evidence to support a handling limitation other than Plaintiff's subjective complaints, which the ALJ reasonably discounted. But Plaintiff cites to a single record from an Emergency Room visit on August 23, 2018 when Plaintiff complained of numbness in both hands that "started when he was using a vibrating machine at work to remove tile flooring." (Tr. 412).[6] On examination, there was no tenderness to palpation over his wrists or hands, Phalen and Tinel signs were only "mildly positive," and he remained "neurovascularly intact," with completely normal strength and range of motion in his bilateral upper extremities. (Tr. 413). The ER physician diagnosed Plaintiff with "paresthesia" or tingling in his bilateral hands but did not indicate any manipulative restrictions. (Tr. 411-412). Plaintiff was provided with a wrist splint and told to follow up with his physician, to the extent that further workup such as a diagnostic EMG was warranted. Plaintiff never followed up for treatment of the alleged numbness issue. And at an examination ten days later, on August 13, 2018, notes reflected normal range of motion and normal reflexes. (Tr. 360). The ALJ expressly considered Plaintiff's "complaints of paresthesia[] of the hands in the months prior to the period at issue," but found that condition to be nonsevere. (Tr. 20).

It is Plaintiff's burden to prove he was disabled. 68 Fed. Reg. 51153, 51155 (Aug. 26, 2003) (comments to final rule) ("You shoulder the dual burdens of production and persuasion through step 4 of the sequential evaluation process."). Apart from his subjective complaints and the single ER record, which evidence the ALJ reasonably discounted, Plaintiff points to no objective evidence (such as EMG findings), or to clinical

---

[6]Plaintiff alleges disability beginning in 2001, and reported no wages between 2012 and 2021.

findings of impaired grip or impaired range of motion/reflexes, or to any medical opinion evidence that would support <u>any</u> handling limitations, much less a work-preclusive limitation to "occasional" handling. *See Stanley v. Sec'y of HHS*, 39 F.3d 115, 118 (6th Cir. 1994) ("the ALJ is not obliged to incorporate unsubstantiated complaints into his hypotheticals"); *Casey v. Sec'y of HHS*, 987 F.2d 1230, 1235 (6th Cir. 1993) ("It is well established that an ALJ may pose hypothetical questions to a vocational expert and is required to incorporate only those limitations accepted as credible by the finder of fact."). Substantial evidence therefore supports the ALJ's RFC as determined, without handling or fingering limitations.

### 3. The ALJ's Determination that Plaintiff Can Perform Past Work

Plaintiff's final claim includes a few additional arguments to support his contention that the ALJ erred by concluding that Plaintiff can perform work at the light exertional level, particularly his past work as a commercial cleaner. It remains Plaintiff's burden to show that the ALJ's findings are unsupported by substantial evidence, not that there is evidence from which the ALJ could have reached a different conclusion. *See Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 477 (6th Cir. 2003). The Commissioner's findings must stand if substantial evidence supports them, regardless of whether the reviewing court would resolve conflicts in the evidence differently. *See Kyle v. Comm'r of Soc. Sec.*, 609 F.3d 847, 854 (6th Cir. 2010); *see also Hickey-Haynes v. Barnhart*, 116 Fed. Appx. 718, 726 (6th Cir. 2004) (stating "substantial evidence is a fairly low bar").

In addition to the off-task and handling limitations discussed above, Plaintiff briefly suggests that the ALJ should have included a greater weight restriction than "light" work permits, and/or should have limited his standing and walking to four hours. (Doc. 8 at 6,

PageID 762; *see also id*., at 11, PageID 767, complaining that the ALJ did "not include any limitation in standing and walking"). Tellingly, Plaintiff's contention that he requires a "standing/walking" limitation or a more restrictive weight limitation is *entirely* cursory. He offers no substantive argument and cites to no evidence whatsoever that would support either additional RFC limitation.

Plaintiff also briefly argues that the VE's classification of his past work was "inaccurate." (Doc. 8 at 4, PageID 760). During the hearing, the VE summarized Plaintiff's testimony that he helped pick up trash around an apartment complex and helped with maintenance, and described that work as commercial cleaner. The VE acknowledged that the job is classified as heavy in the DOT but that Plaintiff had testified that "he actually performed it in the light exertional level." (Tr. 56). In response to a hypothetical question that included limitations corresponding to the RFC actually determined by the ALJ, the VE testified that Plaintiff would be able to continue performing the commercial cleaner job "as he actually performed it." (Tr. 58).

Based on the VE's testimony, the ALJ determined at Step 4 of the sequential analysis that Plaintiff had failed to establish his burden to show that he could not perform his past work of "commercial cleaner" as he actually performed that job. Plaintiff now complains that his prior work included too few duties to be classified as a "commercial cleaner." (*Id*.; *see also* Doc. 8 at 13, PageID 769 (arguing that "[t]he actual work performed by Plaintiff does not fit within the definition" of commercial cleaner set forth in the DOT)).[7] Plaintiff further argues that the VE's testimony that Plaintiff could perform the commercial

---

[7] Plaintiff makes similar arguments concerning the VE's classification of his prior work as "construction worker II." But the ALJ determined only that Plaintiff could perform his past job as commercial cleaner; therefore, any arguments relating to the construction worker position are irrelevant.

14

cleaner job is "incorrect" because the DOT classifies that job at the heavy exertional level, whereas the ALJ found him capable of only light work.

This Court declines to review Plaintiff's new challenge to the VE's classification of his past work as a "commercial cleaner." Plaintiff's failure to raise the issue by questioning the VE at the hearing constitutes a waiver of any such claim. *Cindi F. v. Comm'r of Soc. Sec.*, 2023 WL 8915582, at *2 (S.D. Ohio, 2023) (holding that plaintiff waived her right to challenge her job classification because she did not raise it at the hearing, citing *Hudson v. Comm'r of Soc. Sec.*, Case No. 1:20-cv-212, 2021 WL 2102027, at *5 (S.D. Ohio, May 25, 2021), adopted at 2022 WL 2817860 (July 19, 2021)); *see also Marrero v. Comm'r of Soc. Sec.*, No. 1:20-cv-212, 2020 WL 9174847, at *8 (N.D. Ohio, Dec. 29, 2020), adopted at 2021 WL 1378896 (N.D. Ohio, April 12, 2021) (same).

Plaintiff's argument that the ALJ erred in classifying Plaintiff's past work at the *light* exertional level, because the DOT generally classifies that job at the *heavy* exertional level, is waived for the same reason. But to the extent that Plaintiff more broadly challenges the VE's testimony as insufficient to constitute substantial evidence, the Court also rejects the argument. The VE explained that even though the commercial cleaner job is often performed at a heavier exertional level (consistent with the DOT), Plaintiff actually performed that job at the light level. (Tr. 56). The VE further testified that a hypothetical individual with Plaintiff's RFC limitations still could perform that work at the light level as Plaintiff had actually performed it. (Tr. 57-58). Based on that testimony, the ALJ determined that Plaintiff could perform his prior commercial cleaner position <u>as actually performed</u>, even though he could not perform the job at any higher exertional level. (*See* Tr. 30, "Per the testimony of the vocational expert, the limitations in the RFC

above allow for the performance of the past relevant work as a commercial cleaner, as he actually performed that job.").

The ALJ noted that the VE considered both exertional and postural requirements, and reasoned that the VE's analysis

> is not contradicted and his sources of data are considered reliable in light of his professional qualifications, long experience placing individuals in jobs, and familiarity with the rules governing the vocational aspects of Social Security disability evaluation. His testimony was consistent with the Dictionary of Occupational Titles (DOT), pursuant to the requirements of Social Security Ruling 00-4p, or otherwise consistent with his experience in the vocational field. Thus, he accurately identified whether the claimant could perform his past relevant work.

(Tr. 30). Because the ALJ applied proper legal standards and reached a decision that Plaintiff could perform his past work based on the VE's testimony, the ALJ committed no error. *See Marrero v. Comm'r of Soc. Sec.*, 2020 WL 9174847, at *7 (N.D. Ohio, 2020) (holding that "because the ALJ applied proper legal standards and reached a decision supported by substantial evidence in concluding that the VE's testimony was consistent with the DOT, the VE's testimony was substantial evidence supporting the ALJ's finding" that the plaintiff could return to his past work); *accord, Cindi F. v. Comm'r of Soc. Sec.*, No. 2:22-cv-1892-JLG-SKB, 2023 WL 3748797, at *4 (S.D. Ohio, June 1, 2023), Report and Recommendation adopted at 2023 WL 8915582 (Dec. 27, 2023); *Burgess v. Comm'r of Soc. Sec.*, Case No. 3:15-cv-701 (M.D. Tenn. Sept. 30, 2016) (holding that an ALJ "can deny a claim at step 4 where the claimant remains capable of performing a composite job 'as actually performed'").

Finally, Plaintiff asserts error at Step 5 of the sequential analysis. (Doc. 8, PageID 757). To state the obvious, the ALJ never reached Step 5 of the sequential analysis because he determined at Step 4 that Plaintiff failed to sustain his burden of proof that he

16

could not continue to perform his prior commercial cleaner job. Above, the Court has explained the substantial evidence that supports the ALJ's determination that Plaintiff did not sustain his burden of proof at Step 4. Therefore, the ALJ was not required to move to Step 5 of the sequential analysis, or to show that there exists other work in the national economy in significant numbers that the Plaintiff can perform.

### III. Conclusion and Order

For the reasons explained herein, **IT IS ORDERED THAT** Defendant's decision be **AFFIRMED** as supported by substantial evidence, and that this case be **CLOSED.**

                                              *s/Stephanie K. Bowman*
                                              Stephanie K. Bowman
                                              United States Magistrate Judge